*Minda v. United States*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2016

(Argued: December 2, 2016     Decided: March 24, 2017)

Docket No. 15-3964

GARY MINDA,

*Plaintiff-Appellant,*

NANCY FINDLAY FROST,

*Plaintiff,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Before:

LIVINGSTON, CHIN, AND CARNEY, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gershon, *J.*), awarding statutory damages of $1,000 to each of the plaintiff taxpayers on account of the Internal Revenue Service's unauthorized disclosure of their tax information to an unrelated third party. The district court granted summary judgment to defendant-appellee United States of America, rejecting the taxpayers' contentions that they were entitled to statutory damages of more than $1,000. On appeal, plaintiff-appellant Gary Minda contends that the district court erred in (1) limiting the award of statutory damages to $1,000, and (2) concluding that he was not entitled to punitive damages as a matter of law.

AFFIRMED.

KATHLEEN PAKENHAM, Cooley LLP, New York, NY, *for Plaintiff-Appellant Gary Minda.*

JENNIFER M. RUBIN (Jonathan S. Cohen, *on the brief*), for David A. Hubbert, Acting Assistant Attorney General, Tax Division, Department of Justice, Washington, D.C., and Bridget M. Rohde, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendant-Appellee United States of America.*

CHIN, *Circuit Judge*:

In this case, the Internal Revenue Service (the "IRS") conducted an examination of the 2007 income tax return of Gary Minda and Nancy Findlay Frost. The IRS prepared a report proposing changes to the return. Instead of sending the report to Minda and Frost, however, the IRS sent the report, which contained their names, social security numbers, and financial information, to the wrong person -- an unauthorized, unrelated third party.

Minda and Frost brought this action below pursuant to 26 U.S.C. § 7431, which permits a taxpayer whose return or return information has been unlawfully disclosed to bring a civil action against the United States for damages. The government conceded liability and acknowledged that Minda and Frost were entitled to $1,000 each in statutory damages for the disclosure of the report. Minda and Frost argued, however, that they were entitled to statutory damages of $1,000 not just for the disclosure of the report but for the disclosure of each item of information contained in the report. They also sought punitive damages.

The government moved for summary judgment to dismiss these additional claims. The district court granted the motion and entered judgment accordingly. For the reasons set forth below, we affirm.

## BACKGROUND

**A.** *The Facts*

The facts are largely undisputed and may be summarized as follows:

In 2009, an IRS employee prepared an examination report (the "Report") proposing changes to the 2007 federal income tax return filed by Minda and Frost. The Report contained "*dozens* of items of return information," including their names, social security numbers, and detailed financial information. Compl. ¶ 10.

In or about October 2010, the IRS mailed a copy of the Report to an unrelated third party in Ohio, "Robert M." On October 21, 2010, Robert M.'s attorney wrote to the IRS advising that the IRS had erroneously sent the Report to his client:

> In the packet sent to my client [Robert M.], there were nine (9) pages, that dealt with Income Tax Examination changes for a Gary Minda and T. Nancy Findlay Frost . . . . I assume you will want to re-send them to the correct person. We are sending a copy of this letter to these taxpayers (with any confidential information related to my client redacted).

Compl. ¶ 9.  The Report is eleven pages.  Hence, it appears that the IRS did not send the entire Report to Robert M., but only nine of the eleven pages.

On October 26, 2010, Minda and Frost learned of the disclosure of the Report to Robert M. when they received a copy of the attorney's letter to the IRS.

Minda complained about the unauthorized disclosure to the IRS, which then conducted an investigation.  After interviewing a number of individuals, the Treasury Inspector General for Tax Administration (the "IG") made the following findings:

- the Report, which was dated October 5, 2009, was printed the week of September 28, 2009, for review by a financial technician;

- the Report was "likely co-mingled" with a report for Robert M. dated September 28, 2009;

- the two reports were generated by different units located in different departments working different shifts and using different printers; and

- the IRS employee who made the unauthorized disclosure could not be identified.

One IRS employee speculated that the Report had been accidentally left on a printer and then gotten mixed in with Robert M.'s documents. Another IRS employee hypothesized that a "network error" might have caused the Report to print on the wrong printer.

Minda and Frost did not suffer any actual damages as a result of the unauthorized disclosure of their return information.

**B.** *The Proceedings Below*

Minda and Frost filed this action in the district court on October 24, 2012. The government answered on December 21, 2012, conceding that the IRS "by way of negligence disclosed plaintiffs' return information to a third party," and requesting that the district court deny all relief other than statutory damages. App. 13.

On December 8, 2014, the government moved for summary judgment, contending that Minda and Frost were entitled to only $1,000 each in statutory damages and that they were not entitled to punitive damages as a matter of law. Minda and Frost opposed the motion, conceding that the material facts were undisputed, but arguing that they were entitled to statutory damages

6

for each item of information disclosed in the Report and that punitive damages were appropriate.

The district court granted the government's motion. *Minda v. United States*, No. 12-CV-05339 (NG), 2015 WL 6673198 (E.D.N.Y. Oct. 9, 2015). On October 9, 2015, the district court entered judgment in favor of Minda and Frost, awarding them $1,000 each. Minda (but not Frost) appealed.

## *DISCUSSION*

We review *de novo* a district court's grant of summary judgment, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). Our task is "to determine whether the district court properly concluded that there was no genuine dispute as to any material fact, such that the moving party was entitled to judgment as a matter of law." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016).

A. *Applicable Law*

Section 6103(a) of the Internal Revenue Code provides that "no officer or employee of the United States . . . shall disclose any return or return

7

information," except to the extent disclosure is authorized under the Code. 26

U.S.C. § 6103(a)(1); *see id.* § 6103(c)-(p).

A "return" is:

any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

26 U.S.C. § 6103(b)(1).

As relevant here, "return information" is:

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, . . . or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

26 U.S.C. § 6103(b)(2)(A).

A "disclosure" is "the making known to any person in any manner

whatever a return or return information." 26 U.S.C. § 6103(b)(8).

If an officer or employee of the United States "knowingly, or by

reason of negligence," discloses a return or return information of a taxpayer,

8

subject to certain exceptions that do not apply here, the taxpayer may bring a civil action for damages against the United States in district court. 26 U.S.C. § 7431(a)(1). Section 7431(c) governs damages:

> In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of --
>
> > (1)    the greater of --
> >
> > > (A)    $1,000 for each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable, or
> > >
> > > (B)    the sum of --
> > >
> > > > (i)    the actual damages sustained by the plaintiff as a result of such unauthorized inspection or disclosure, plus
> > > >
> > > > (ii)    in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence, punitive damages, plus
> >
> > (2)    the costs of the action, plus
> >
> > (3)    in the case of a plaintiff which is described in section 7430(c)(4)(A)(ii), reasonable attorneys fees, except that if the defendant is the United States, reasonable attorneys fees may be awarded only if the plaintiff is the prevailing party (as determined under section 7430(c)(4)).

26 U.S.C. § 7431(c).

**B.**     *Application*

As the government concedes, the IRS disclosed Minda's return information without authorization, in violation of § 6103(a)(1). Likewise, Minda acknowledges that he did not suffer any actual damages as a result of the disclosure. Hence, two matters are presented on appeal: first, the calculation of statutory damages under § 7431(c)(1)(A), which allows "$1,000 for each act of unauthorized inspection or disclosure of a return or return information," and, second, the availability of punitive damages under § 7431(c)(1)(B)(ii), which allows punitive damages for an inspection or disclosure that is "willful" or "the result of gross negligence."

**1.     Statutory Damages**

The district court concluded that Minda was entitled to statutory damages only for the act of disclosing the Report and not separately for disclosure of each item of information contained in the Report. We agree.

Section 7431(c)(1)(A) provides that an aggrieved taxpayer is entitled to statutory damages of $1,000 for "each act" of unauthorized inspection or disclosure. The word "act" is not defined in the statute, and thus it is presumed to have its ordinary meaning. *Smith v. United States*, 507 U.S. 197, 201 (1993); *see*

10

*also Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012) (holding that "[w]hen a term goes undefined in a statute, we give the term its ordinary meaning," and consulting dictionaries to determine ordinary meaning). The ordinary meaning of the word "act" is "a thing done or being done." Webster's Third New Int'l Dict. of the Engl. Lang., at 20 (1961). The "thing done or being done" in the statute here is the act of unauthorized inspection or disclosure -- in this case a single act of disclosure, the errant mailing of the Report.

Minda argues that § 7431(c) "should be read to impose a penalty for each item of return information disclosed." Pl.-Appellant's Br. 7. The argument, however, ignores the plain words of the statute and would require us to read words into the statute that are not there. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (courts must "ordinarily resist reading words or elements into a statute that do not appear on its face") (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)). Section 7431(c)(1)(A) provides statutory damages "for each act . . . of disclosure," not "for each item of return information disclosed." The word "each" modifies "act," not "information." The phrase "each item of return information" does not appear.

The statute also refers to "each act of . . . disclosure of a return or return information."  A return, of course, will contain multiple items of information, and likewise "return information" clearly encompasses multiple items of information.  Yet, § 7431(c)(1)(A) treats the disclosure of either -- "a return or return information" -- as one act subject to one award of statutory damages of $1,000.  Minda's contention that each item of information constitutes a separate disclosure subject to a separate award of statutory damages contradicts this language.

Finally, we note that Minda's interpretation simply does not make sense.  The Report arguably contains dozens of items of return information, as there are more than a hundred different entries.  Under Minda's theory, each of these items would constitute a separate disclosure, and he would be entitled to more than $100,000 in statutory damages, even though he suffered no actual damages and the IRS was guilty of only one act of unauthorized disclosure.  In addition, a taxpayer whose name and Social Security number were disclosed, for example, would receive more in statutory damages than one whose entire return -- containing his name, Social Security number, and much more -- was disclosed.  Congress could not have intended such a result.

We find no ambiguity in the statute, and hold that the statute clearly provides an aggrieved taxpayer $1,000 in statutory damages for "each act" of unauthorized disclosure, not for each item of information disclosed. *Accord Rorex v. Traynor*, 771 F.2d 383, 388 (8th Cir. 1985) (limiting taxpayers to $1,000 in statutory damages where IRS employee disclosed multiple items of information in one communication);[1] *Marré v. United States*, No. H-88-1103, 1992 WL 240527, at *2 (S.D. Tex. June 22, 1992) (holding that statutory damages under § 7431(c)(1)(A) would be based on number of actionable communications, and declining to "carve up each communication into separate, actionable disclosures, even where we deal, not with reiterated facts, but with distinct, though related, items of return information"), *aff'd in part and vacated in part on other grounds*, 38 F.3d 823 (5th Cir. 1994); *Smith v. United States*, 730 F. Supp. 948, 954 (C.D. Ill. 1990) (holding that taxpayer was entitled to only $1,000 in statutory damages for disclosure of one memorandum, even though memorandum contained taxpayer's return information for multiple tax years), *rev'd on other grounds*, 964

---

[1] A subsequent Eighth Circuit case counted the verbal disclosure of six pieces of return information during an interview as six separate acts of disclosure. *See Snider v. United States*, 468 F.3d 500, 506, 509 (8th Cir. 2006). Even assuming *arguendo* that *Snider* was correctly decided, however, the situation here is closer to that in *Rorex*, where the act of disclosure was the service of a notice of levy on the taxpayers' bank containing "confidential return information about the taxpayers." 771 F.2d at 385.

13

F.2d 630 (7th Cir. 1992); *cf. Siddiqui v. United States*, 359 F.3d 1200, 1202 (9th Cir. 2004) ("The plain meaning of the language used by Congress in § 6103 supports our focus . . . on the act of disclosure rather than the number of people who receive unauthorized information.").

Finally, to the extent there is any doubt, we must resolve the matter in favor of the government. Where, as here, Congress has waived sovereign immunity, "precedent teaches 'that the [g]overnment's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires.'" *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)).

## 2. Punitive Damages

The district court held that Minda was not entitled to punitive damages as a matter of law because no reasonable jury could find, on the record presented, that the disclosure resulted from anything other than ordinary negligence. We agree.[2]

---

[2] Consequently, we do not reach the government's argument that, under § 7431(c)(1)(B)(ii), a taxpayer may not recover punitive damages unless he sustained actual damages. *Compare Barrett v. United States*, 917 F. Supp. 493, 504 (S.D. Tex. 1995) ("The very language and structure of the statute, the coupling of actual and punitive damages under subpart (1)(B) and failure of the statutory damages subpart, (1)(A), to mention punitive damages, would, logically, mean that punitive damages are

14

Under § 7431(c)(1)(B)(ii), punitive damages may be recovered "in the case of a willful inspection or disclosure or an inspection or disclosure which is the result of gross negligence." 26 U.S.C. § 7431(c)(1)(B)(ii). Minda argues that the IRS was guilty of gross negligence. In particular, he contends that "[i]t is apparent here that the IRS personnel responsible for Mr. Minda's Audit Report completely disregarded their duty to maintain taxpayer confidentiality." Pl.-Appellant's Br. 17.

Gross negligence requires conduct that is "highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious the defendant must have been aware of it," that is, "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 454 (2d Cir. 2009) (internal quotation marks and citations omitted) (discussing common law definitions of gross negligence and reckless conduct); *see also Barrett v. United States*, 100 F.3d 35, 40 (5th Cir. 1996) (affirming dismissal of punitive damages claim under

recoverable only when actual damages have been proved."), *aff'd on other grounds*, 100 F.3d 35 (5th Cir. 1996), *with Mallas v. United States*, 993 F.2d 1111, 1126 (4th Cir. 1993) (holding that, under § 7431(c), "a taxpayer may recover punitive damages, even where his actual damages are zero, provided those damages exceed the amount of the subsection (1)(A) damages").

§ 7431(c) and noting that "[c]onduct that is grossly negligent is . . . marked by 'wanton or reckless disregard of the rights of another'" (citation omitted)). To be grossly negligent, "'the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care.'" *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998) (citation omitted).

Minda has pointed to no evidence of aggravated conduct or the wanton or reckless disregard of his rights or conduct smacking of intentional wrongdoing. To be sure, someone at the IRS failed to exercise reasonable care, sending nine pages of the Report to the wrong person. But there is nothing in the record to suggest that this was anything other than the result of simple negligence or carelessness. On the record presented to the district court, a reasonable factfinder could conclude only that the Report inadvertently became commingled with Robert M.'s documents, and that an IRS employee then sent the package to Robert M. without realizing it contained materials relating to two other taxpayers.

The district court correctly granted summary judgment to the United States on Minda's claim for punitive damages.

16

*CONCLUSION*

For the reasons set forth above, the judgment of the district court is

**AFFIRMED**.