15-2907
*Frego v. Parole Officer F. Kelsick*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of May, two thousand seventeen.

Present:
>JOHN M. WALKER, JR.,
>DEBRA ANN LIVINGSTON,
>GERARD E. LYNCH,
>>*Circuit Judges*.

_____

LYNDA M. FREGO,

>*Plaintiff-Appellant*,

TROY CLAYTON WALLACE,

>*Plaintiff*,

>v.                                                      15-2907

PAROLE OFFICER F. KELSICK, SENIOR
PAROLE OFFICER SENZAMICI,

>*Defendants-Appellees,*

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
ANDREA EVANS, Chairwoman,

>*Defendants*.

_____

1

For Plaintiff-Appellant:     BENJAMIN G. SHATZ, Manatt, Phelps & Phillips, LLP, Los Angeles, CA

For Defendants-Appellees:     ERIC DEL POZO, Assistant Solicitor General (Barbara D. Underwood, Solicitor General and Steven C. Wu, Deputy Solicitor General, *on the brief*), for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY

Appeal from a judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Lynda M. Frego ("Frego") appeals two orders of the district court which collectively granted summary judgment on Frego's Fourth Amendment unreasonable search and excessive force claims, brought under 42 U.S.C. § 1983, to Defendant parole officers Fabian Kelsick and Vincent Senzamici. "We review *de novo* a district court's grant of summary judgment, 'construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor.'" *Minda v. United States*, 851 F.3d 231, 234 (2d Cir. 2017) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

A law enforcement officer is entitled to qualified immunity where his discretionary conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." *Spavone v. N.Y. State of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). The officer receives this protection "unless the unlawfulness of [his] actions was apparent in light of

2

preexisting law." *Doninger v. Niehoff*, 642 F.3d 334, 351 (2d Cir. 2011). Whether a right was clearly established at the time of the conduct at issue is a question of law, whereas whether that conduct was "objectively reasonable, *i.e.*, whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." *Kerman v. City of New York*, 374 F.3d 93, 108–09 (2d Cir. 2004).

## A. Unreasonable Search

"The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Newton*, 369 F.3d 659, 664 (2d Cir. 2004). While a warrantless home search is presumptively unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980), a search of a parolee's residence falls within the "special needs" exception to the warrant requirement, *see Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987); *Newton*, 369 F.3d at 665 n.2 (applying "special needs" exception to parole search). Indeed, parolees "can be subjected to burdens upon their privacy that would be unconstitutional were they applied to the general citizenry, as long as those burdens are imposed pursuant to a regulation that satisfies the Fourth Amendment's reasonableness requirement." *Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004). Under New York law, "there is a reasonableness requirement embedded within the rule" permitting such searches, *id.* at 116, in that they must be "rationally and reasonably related to the performance of [the officer's] duty as a parole officer," *People v. Huntley*, 43 N.Y.2d 175, 179 (1977).

The district court properly concluded that Defendants here are entitled to qualified immunity because they reasonably believed that Frego's home was the residence of her estranged husband, Troy Clayton Wallace ("Wallace"), an absconded parolee who had been

3

missing for over a week.[1]  This belief was reasonable given (1) Wallace's wife and high-school-aged daughter, Disney, lived there; (2) Wallace had failed to report to his assigned housing upon release, and Defendants found no evidence of his presence at three other residences with which he was associated; and (3) Frego's upstairs neighbor, William Savino, told Defendants that Wallace "came and went" from Frego's home.  These facts, in tandem, constituted an objectively reasonable basis for believing that Wallace had taken up residence in Frego's home.  *See Moore*, 371 F.3d at 117 (concluding that because "defendants [reasonably] believed they were entering the residence of an absconded parolee, . . . qualified immunity protect[ed] them from liability, even if that belief was mistaken")

Wallace's parole entailed consent to searches of his "person, residence[,] and property," App'x at 60, such that Defendants' reasonable belief that Wallace resided in Frego's home provided an objectively reasonable basis for Defendants' conclusion that a home inspection could be conducted.  Further, Defendants here were privy to strong evidence that Wallace—a convicted sex offender—had violated multiple conditions of his parole, including a prohibition on contact with minors, by virtue of his presence in Frego's house.  Defendants therefore reasonably concluded they could, in the course of their parole-related duties, and despite Frego's objection, *see United States v. Lovelock*, 170 F.3d 339, 345 (2d Cir. 1999) ("A person who occupies a premises jointly with another has a reduced expectation of privacy since [she] assumes the risk that [her] house-mate may engage in conduct that authorizes entry into the premises."), "do a visual inspection [of Frego's home] to make sure [Disney] was safe and to confirm that there were no other individuals, particularly other minors, in the house," App'x at

---

[1] Defendants both aver that they did not personally participate in the search.  Because Frego disputes this fact, we assume their participation for the purposes of this analysis.

4

57; *see United States v. Ramos*, 685 F.3d 120, 125, 129 n.6 (2d Cir. 2012) (upholding warrantless residence search "to determine whether anyone else was present and to look for evidence of any parole violation"); *United States ex rel. Santos v. N.Y. State Bd. of Parole*, 441 F.2d 1216, 1217–18 (2d Cir. 1971) (upholding warrantless residence search designed to "obtain all the facts and circumstances surrounding" parole violations). The mere fact that Wallace had been arrested moments before the search did not extinguish Defendants' duty to investigate, and did not render the search unlawful. *See United States v. Barner*, 666 F.3d 79, 85–86 (2d Cir. 2012). Accordingly, the district court properly dismissed Frego's unreasonable search claim on qualified immunity grounds.[2]

### B. Excessive Force

Excessive force claims are governed by the Fourth Amendment's "objective reasonableness" standard, which the Court applies by "balancing . . . 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 388, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *accord Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). In conducting this assessment, the Court adopts "the perspective of a reasonable officer on the scene"—which "requires careful attention to the facts and circumstances of [the]

---

[2] As to the alleged search of Disney's room and drawer, the district court held, in adjudicating Defendants' motion to dismiss under Rule 12(b)(6), that Frego could not pursue a Fourth Amendment claim based on harm to her daughter. Frego never challenged that ruling. Accordingly, to the extent that Frego contends in her opening brief that the scope of the search of Disney's room was unreasonable, that claim fails. Further, while Frego now argues in her reply brief that Defendants' search was unreasonable because *she* had a privacy interest in Disney's room and its contents, that argument is waived because it was not made to the district court or included in Frego's principal brief on appeal. *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant . . . raised them in a reply brief.").

particular case"—and considers "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *accord Terebesi*, 764 F.3d at 231.

As an initial matter, Frego failed to object to the magistrate judge's Report and Recommendation pertaining to her excessive force claim (which the district court adopted in granting summary judgment on qualified immunity grounds), thereby barring appellate review. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008). In any event, given that Defendants were entitled to qualified immunity as to the search, they were also, in the circumstances of this case, entitled to qualified immunity as to the force they used to effectuate it. Defendants were permitted to detain Frego using reasonable force until their search was concluded, *see Muehler v. Mena*, 544 U.S. 93, 98–99 (2005), particularly because Frego had already demonstrated a lack of cooperativeness with law enforcement, *see Bailey v. United States*, 133 S. Ct. 1031, 1037–39 (2013). Further, in so doing, Defendants and other officers allegedly pushed through Frego's door only because Frego attempted to lock them out and thus prevent the search, and thereafter an officer simply placed his arm in front of Frego, the bare minimum amount of force necessary to detain her. Defendants' minimal use of force was not objectively unreasonable given their belief that a search of Frego's home was warranted, and as such Defendants are entitled to qualified immunity on Frego's excessive force claim.

\* \* \*

6

We have considered Frego's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk